UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANCHOR TOWER, LLC, A FLORIDA )
LIMITED LIABILITY COMPANY, )
)
PLAINTIFF, )
)
vs. )
) Case No.
ST. JOHNS COUNTY, FLORIDA, A )
POLITICAL SUBDIVISION OF THE STATE ) 6:09-cv-780-ORL-31 GJK
OF FLORIDA, )
)
DEFENDANT. )
)

FILED 5-08-09
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## COMPLAINT

The Plaintiff, **ANCHOR TOWER, LLC** ("Anchor"), by and through its undersigned counsel, hereby sues the Defendant, St. Johns County, Florida (the "County"), and alleges as follows:

### PARTIES

1. Anchor is a limited liability company organized under the laws of the State of Florida with its principal place of business in Winter Park, Florida.

2. The County is a political subdivision of the State of Florida.

### JURISDICTION

3. This is an action for declaratory and injunctive relief pursuant to the Federal Telecommunications Act of 1996, 47 U.S.C. §§ 332, et seq. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Declaratory relief is authorized by 28 U.S.C. § 2201.

This is also an action for declaratory relief pursuant to Chapter 86, Florida Statutes. This Court has jurisdiction pursuant to 28 U.S.C. § 1367.

## NATURE OF THE ACTION

4. On March 17, 2009, the County denied Anchor's application to place a 150' mono-cross telecommunications tower within 600 feet of a designated scenic roadway. Anchor now seeks a declaratory judgment that the denial is void as violative of the Federal Telecommunication Act of 1996, 47 U.S.C. § 332, et seq. Anchor further seeks a mandatory injunction ordering the County to approve the application as submitted in accordance with the Federal Telecommunications Act. Anchor also seeks declaratory judgment that the 150' mono-cross tower was automatically approved due to the County's failure to comply with requirements set forth in Fla. Stat. § 365.172(12)(d)(2009).

## VENUE

5. Venue is proper in this district because Plaintiff maintains its principal place of business in this district, the County resides or is found within this district, a substantial part of the events or omissions giving rise to the claim have occurred within this district, and the property at issue is located within this district.

## GENERAL ALLEGATIONS

6. Anchor is in the business of providing service to various licensed personal wireless telecommunications providers by locating, leasing, zoning, constructing, and owning personal wireless service facilities.

7. Anchor proposed to build a 150' mono-cross telecommunications tower (the "Proposed Mono-Cross") on a parcel of land leased from the Episcopal Church in the Diocese of Florida, Inc. (the "Leased Parcel"). The Episcopal Church in the Diocese of Florida operates the St. Patrick's Episcopal Church on the parent tract of the leased property (the "Church Property"). A mono-cross is a camouflage monopole tower designed to look like a cross. Anchor's anchor tenant for the tower is Metro PCS. Metro PCS is in the business of providing cellular telecommunications services. Metro PCS requested the construction of a tower on which to locate its personal wireless service facilities to close a service coverage gap in its cellular telecommunications services in St. Johns County. In addition to these service coverage needs, the tower would also provide E911 location services to the surrounding area while augmenting the mobile in vehicle basic emergency 911 services.

8. The Church property is located at 1217 State Road 13 North, St. Johns, Florida and is zoned RS-E (Residential, Single Family). The Church property contains approximately 5 acres. The Church Property has a Residential-B Future Land Use designation.

9. The St. Johns County Land Development Code §§ 2.03.01 and 20.03.26 provide that telecommunications towers on RS-E zoned land are allowable as a special use.

10. Section § 2.03.26 specifically provides as follows:

**Section 2.03.26 Antenna Towers**

Antenna Towers may be permitted as a Special Use within districts as defined in Section 2.03.01. Such Antenna Towers shall be subject to the requirements of Part 3.04.00 and Section 6.08.12 of this Code and further subject to the following:

3

A. Notwithstanding anything to the contrary in this Code, no Antenna Tower other than an unguyed monopole tower or Alternative Tower Structure shall be located in any residential zoning district.

B. Regardless of the zoning district in which the Antenna Tower is located, any tower proposed to be within two hundred fifty (250) feet of the nearest Lot line of any residential or Open Rural (OR) zoning district shall be reviewed as a Special Use.

C. And the applicant shall demonstrate that there are no other suitable existing Antenna Towers or Structures on which the applicant/provider can reasonable place its antennas, as provided in Section 6.08.12.R.

D. There are no significant adverse impacts to Environmentally Sensitive Areas or areas judged to possess unique environmental or cultural qualities.

E. This Section 2.03.26 does not apply to antenna towers and air traffic control towers associated with aviation Use constructed on property zoned Airport Development District or to Antenna Towers and Antennas built for St. John County government use.

11. Section 6.08.12 of the St. Johns County Land Development Code further provides for certain setback and locational requirements and performance criteria for telecommunications towers:

   a. towers located in or near residential zoning districts must be located at least 250' from the nearest lot line of any residential zoning district; and

   b. towers located in residential zoning districts have a maximum height of 150' if constructed for two or more users; and

   c. the distance of any tower from the closest residential dwelling, school, or emergency evacuation shelter shall be equal to or greater to the designed Collapse Zone; and

4

d. no tower shall be built or corrected within 600' of the center line of any designated scenic highway without the final approval of the Board of County Commissioners.

12. On June 24, 2008, Anchor submitted an application (the "Special Use Application") to allow the Proposed Mono-Cross as a special use. A true and correct copy of the Special Use Application is attached hereto as **Exhibit "A."**

13. There is no dispute in the record that the Proposed Mono-Cross met all of the locational, design, and performance criteria set froth in § 6.08.12 of the St. Johns County Land Development Code except for the Scenic Highway setback found in § 6.08.12(V).

14. Section 6.08.12(V) provides as follows:

> V. Antenna Towers located on Scenic Highways
>
> No Antenna Tower shall be built or erected within six hundred (600) feet of the centerline of any designated Scenic Highway or Scenic Roadway without the final approval of the Board of County Commissioners, after consideration and recommendation by the Planning and Zoning Agency.
>
> The Board of County Commissioners shall not issue an approval for the location of an Antenna Tower within six hundred (600) feet of any designated Scenic Highway or Scenic Roadway as defined in Article XII of this Code unless the applicant establishes that disapproval of such tower would prohibit communications service to a particular area. The use of an Alternative Tower Structure shall be considered in the approval of an Antenna Tower within six hundred (600) feet of an designated Scenic Highway or Scenic Roadway.

15. State Road 13 is a designated Scenic Highway and the Proposed Mono-Cross was planned for a location 350' from the roadway, within the 600' setback.

16. The Special Use Application submitted by Anchor demonstrated the following:

a. The Proposed Mono-Cross location's distance from adjacent residential dwellings and adjacent residentially zoned land exceeded the setback requirement in the St. Johns County Code; and

b. The Proposed Mono-Cross was designed so that the collapse zone fell within the leased parcel, and

c. The Proposed Mono-Cross would not be lighted; and

d. No other towers or structures existed on which Metro PCS could locate its antennae and close its service coverage gap; and

e. The proposed tower was designed as a mono-cross, meeting the Land Development Code's definition of "Alternative Tower Structure."

f. The Proposed Mono-Cross compound proposed landscaping that met the St. Johns County code requirements; and

g. The Proposed Mono-Cross was located on the Property with mature tree canopy to the north and east so as to buffer the Proposed Mono-Cross from off-site uses.

17. Submitted with the Special Use Application was uncontroverted evidence that Metro PCS has a coverage gap in the area and that the Proposed Mono-Cross site would fill in Metro PCS's coverage gap. See Application attached as Exhibit A.

18. St. Johns County notified Anchor of its comments on the Special Use Application submitted on June 24, 2008. These comments are attached as **Exhibit "B"**. Exhibit B contained only one comment directed to any incompleteness of the application, that being an environmental assessment.

19. Anchor submitted the environmental assessment on October 6, 2008.

20. Upon submission of the environmental assessment, no notice was provided to Anchor by St Johns that any further application deficiency remained.

21. Pursuant to Sections 9.03.01, 9.03.02, 9.06.00, and 6.08.12(V) of the St. Johns County Land Development Code, unless appealed to the Board of County Commissioners, the

ORLA_1300365.1

Planning and Zoning Agency's action on the Special Use Application for the Proposed Mono-Cross Tower is final, except for the limited issue of the Scenic Highway setback relief, on which the Planning and Zoning Agency is advisory to the Board of County Commissioners.

22. Due to numerous delays by St. Johns County, the Special Use Application was not scheduled to be heard by the St. Johns County Planning and Zoning Agency until February 5, 2009.

23. In preparation for the initial Planning and Zoning Agency hearing, the planning staff of the County prepared a Staff Report recommending approval. See Staff Report attached as **Exhibit "C."**

24. The St. Johns County Planning and Zoning Agency heard the matter at its February 5, 2009 meeting. A transcript of that hearing is attached as **Exhibit "D."**

25. At the hearing the St. Johns County Staff recommended approval of both the Special Use Application and the Proposed Mono-Cross location within the Scenic Highway setback.

26. The Planning and Zoning Agency, by a vote of 4-3, approved the Special Use Application and recommended to the Board of County Commissioners that the Proposed Mono-Cross location within the 600' Scenic Highway setback be approved. The Special Use Application approval was not appealed.

27. On March 17, 2009, the Board of County Commissioners held a quasi-judicial hearing on the narrow issue of whether the Proposed Mono-Cross Tower should be approved within the 600' Scenic Highway setback. A transcript of that hearing is attached as **Exhibit "E."**

7

28. At this hearing the Staff prepared an agenda item, attaching the same Staff Report and recommended approval of the request to place the Proposed Mono-Cross within the 600' Scenic Highway setback. A copy of this agenda item is attached as **Exhibit "F."**

29. At the conclusion of the hearing the Board of County Commissioners voted unanimously to disapprove the Proposed Mono-Cross location within the 600' Scenic Highway setback.

30. At the Board of County Commissioners hearing, three citizens spoke in favor of the Proposed Mono-Cross and five citizens spoke against it. The five opposed citizens did not articulate any fact-based testimony to support a denial.

31. The Board of County Commissioners voted to deny the request to place the Proposed Mono-Cross tower within the 600' scenic highway setback finding the following:

    a. The request is contrary to the public interest and is in conflict with surrounding development; and

    b. The request does not meet the criteria established by Sections 2.03.01 and 6.08.12 of the Land Development Code; and

    c. The request is in conflict with the Future Land Use Designation of Residential -B; and

    d. The applicant did not provide evidence that denial of the application will prohibit communications in the area; and

    e. The before and after coverage maps provided by the applicant fail to show a substantial improvement in coverage and therefore fails to demonstrate a need for the tower; and

    f. The applicant did not demonstrate that there was no other suitable location to provide a tower to serve the area; and

    g. The applicant filed to establish that the applied for height of 150' was required to ensure that there would not be an effective prohibition of communication service in the subject area; and

8

  h. The request is inconsistent with the comprehensive plan.

32. After the hearing on March 17, 2009, Anchor was provided with a copy of the Order of the Board of County Commissioners, attached hereto as **Exhibit "G,"** dated March 17, 2009, but rendered on April 16, 2009. The Order purports to contain the Findings of Fact made by the Board of County Commissioners at their meeting on March 17, 2009.

33. The Findings of Fact, however, set forth in the Order do not comport with the narrow issue properly before the Board and are not supported by competent, substantial evidence in the record.

## THE FEDERAL TELECOMMUNICATIONS ACT OF 1996

34. The United States Congress enacted the Federal Telecommunications Act of 1996 (the "Act") to create a national policy framework to accelerate the deployment of telecommunications technology. The Act does so in part by placing certain substantive and procedural limitations upon the authority of local bodies to regulate and limit the construction of facilities for wireless communication services.

35. One of those limitations, found in 47 U.S.C. § 332(c)(7)(B)(iii), requires that "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

36. Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof, may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. See 47 U.S.C. § 332 (c)(7)(B)(v).

9

ORLA_1300365.1

37. The County violated the provisions of the Act when it denied Anchor's Application for a 150' Mono-Cross tower without substantial evidence in the written record to support its actions.

38. Based upon the above allegations, Anchor is entitled to declaratory and injunctive relief under the Act, 47 U.S.C. §§ 332, et seq., and 28 U.S.C. § 2201.

39. Anchor has no adequate remedy at law and there is an actual, practical, and present need for declaratory and injunctive relief to further the policies of the Act.

40. All conditions precedent to bringing this action have been met or waived.

## COUNT I (FOR DECLARATORY RELIEF)

41. Anchor realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42. This is an action for declaratory relief pursuant to 47 U.S.C. § 332 and 28 U.S.C. § 2201.

43. On June 24, 2008, Anchor submitted an Application to the County for special use approval to construct a 150' mono-cross tower on a parcel located at 1217 State Road 13 North, St. Johns, Florida.

44. The Proposed Mono-Cross met all of the criteria set forth in the County's Land Development Regulations for special use approval of telecommunications towers, including establishing that disapproval of the Proposed Mono-Cross within the 600' scenic highway setback would prohibit communications service to a particular area.

45. Because the Planning and Zoning Agency had already approved the special use, the only issue before the Board of County Commissioners was the request to locate the Proposed Mono-Cross Tower 350' from the centerline of a scenic highway.

46. Anchor, through its anchor tenant MetroPCS, presented uncontroverted radio frequency engineering expert testimony that denial of the application would prohibit communications service in the subject area.

47. The County violated the Act because its denial was not supported by substantial competent evidence. See 47 U.S.C. § 332(c)(7)(B)(iii). There was no other competent substantial evidence on the record to support a finding that denial would prohibit communications service to the area.

48. As the County has failed to support its denial with written findings of fact supported by substantial evidence, its decision cannot stand under the Federal Telecommunications Act.

WHEREFORE, Anchor respectfully requests that this Court enter an order declaring the County's denial of Anchor's Application to place its 150' Mono-Cross Tower within the 600' scenic highway setback as null and void; for the costs associated with prosecuting this action; and for such other relief as the Court deems just and proper.

## COUNT II (FOR INJUNCTIVE RELIEF)

49. Anchor realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

50. This is an action for injunctive relief pursuant to 47 U.S.C. § 332.

11

51. On June 24, 2008, Anchor submitted an Application to the County for special use approval to allow it to construct a 150' mono-cross telecommunications tower on property located at 1217 State Road 13 North, St. Johns, Florida.

52. The Proposed Mono-Cross met all the requirements of the County's Land Development Code.

53. The County violated the Act because its denial was not supported by substantial competent evidence. See 47 U.S.C. § 332(c)(7)(B)(iii).

54. Thus, pursuant to the Act the County's decision cannot stand.

55. Because the denial of Anchor's Application is not supported by competent, substantial evidence, this Court, pursuant to the Act, should issue an injunction mandating the approval of the Application as submitted on this record.

WHEREFORE, Anchor respectfully requests that this Court enter an order declaring the County's denial of Anchor's application for a 150' mono-cross telecommunications tower null and void; for a mandatory injunction instructing the County to approve Anchor's Application as submitted; for the costs associated with prosecuting this action; and for such other relief as this Court deems just and proper.

## COURT III (FOR DECLARATORY RELIEF – FLORIDA STATE LAW)

56. Anchor realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

ORLA_1300365.1

57. This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes (2009).

58. Fla. Stats. § 365.172(12)(d)(2) and (3) provide as follows:

> 2. A local government shall grant or deny each properly completed application for any other wireless communications facility based on the application's compliance with the local government's applicable regulations, including but not limited to land development regulations, consistent with this subsection and within the normal timeframe for a similar type review but in no case later than 90 business days after the date the application is determined to be properly completed in accordance with this paragraph.
>
> 3.a. An application is deemed submitted or resubmitted on the date the application is received by the local government. If the local government does not notify the applicant in writing that the application is not completed in compliance with the local government's regulations within 20 business days after the date the application is initially submitted or additional information resubmitted, the application is deemed, for administrative purposes only, to be properly completed and properly submitted. However, the determination shall not be deemed as an approval of the application. If the application is not completed in compliance with the local government's regulations, the local government shall so notify the applicant in writing and the notification must indicate with specificity any deficiencies in the required documents or deficiencies in the content of the required documents which, if cured, make application properly completed. Upon resubmission of information to cure the stated deficiencies, the local government shall notify the applicant, in writing, within the normal timeframes of review, but in no case longer than 20 business days after the additional information is submitted, of any remaining deficiencies that must be cured. Deficiencies in document type or content not specified by the local government do not make the application incomplete. Notwithstanding this subparagraph, if a specified deficiency is not properly cured when the applicant resubmits its application to comply with the notice of deficiencies, the local government may continue to request the information until such time as the specified deficiency is cured. The local government may establish reasonable timeframes within which the required information to cure the application deficiencies is to be provided or the application will be considered withdrawn or closed.

13

b. If the local government fails to grant or deny a properly completed application for a wireless communications facility within the timeframes set forth in this paragraph, the application shall be deemed automatically approved and the applicant may proceed with placement of the facilities without interference or penalty. The timeframes specified in subparagraph 2 may be extended only to the extent that the application has not been granted or denied because the local government's procedures generally applicable to all other similar types of applications require action by the governing body and such action has not taken place within the timeframes specified in subparagraph 2. Under such circumstances, the local government must act to either grant or deny the application at its next regularly scheduled meeting or, otherwise, the application is deemed to be automatically approved.

c. To be effective, a waiver of the timeframes set forth in this paragraph must be voluntarily agreed to by the applicant and the local government. A local government may request, but not require, a waiver of the timeframes by the applicant, except that, with respect to a specific application, a one time waiver maybe required in the case of a declared local, state, or federal emergency that affects the administration of all permitting activities of the local government.

59. This is an action for declaratory judgment pursuant to the provisions of Chapter 86, Florida Statutes, to determine the status of Anchor's application pursuant to Fla. Stat. § 365.172(12)(d)(2) and (3). Anchor Tower is entitled to have determined whether 90 business days elapsed prior to the March 17, 2009 Board of County Commissioners meeting and, consequently whether Anchor's application is automatically approved, allowing it to proceed to construction.

60. Anchor asserts that its application was properly completed on October 6, 2008 and that 90 business days elapsed on February 17, 2009.

61. Despite St Johns County staffs' repeated assertions that it would schedule the matter for BOCC approval as soon as the special use application went to the Planning and

14

Zoning Agency on February 5, 2009, the matter was not scheduled for BOCC hearing until March 17, 2009, well after the February 17, 2009 deadline.

62. St. Johns County held a regularly scheduled BOCC meeting on February 17, 2009 and on March 3, 2009, prior to the meeting on March 17, 2009.

63. Anchor Tower did not acquiesce or agree to waive any statutory timeframes. See letter attached as **Exhibit "H."**

64. Declaratory judgment should be granted in order to afford relief from uncertainty under Fla. Stat. § 365.172(12)(d) as to whether Anchor can lawfully proceed to construction of its 150' Mono-Cross Tower on the Church Property.

WHEREFORE, Anchor prays this Court grant it all declaratory relief to which it is entitled, including but not limited to:

1. Determine the rights of and status of the parties under Fla. Stat. § 365.172(12)(d).

2. Award Anchor its reasonable costs pursuant to Fla. Stat. § 86.081.

3. Award Anchor all other appropriate relief.

Dated: May 5, 2009

Respectfully submitted,

_____
Mary D. Solik
Florida Bar No. 0856479
msolik@foley.com
**Foley & Lardner LLP**
111 North Orange Avenue, Suite 1800
Orlando, FL 32801-2386

15

ORLA_1300365.1

P. O. Box 2193
Orlando, FL 32802-2193
407.244.3259
407.648.1743

Attorneys for Anchor Tower, LLC

16